CLERK, U.S. DISTRICT COURT

5/16/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

1   JOSEPH T. MCNALLY
    Acting United States Attorney
2   LINDSEY GREER DOTSON
    Assistant United States Attorney
3   Chief, Criminal Division
    DECLAN T. CONROY (Cal. Bar No. 350570)
4   DANIEL H. WEINER (Cal. Bar No. 329025)
    Assistant United States Attorneys
5   International Narcotics,
      Money Laundering, and Racketeering Section
6       1400 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone:  (213) 894-2872/0813
8       Facsimile:  (213) 894-0142
        E-mail:     declan.conroy@usdoj.gov
9                   daniel.weiner@usdoj.gov

10  Attorneys for Plaintiff
    UNITED STATES OF AMERICA

11                   UNITED STATES DISTRICT COURT

12               FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,          No. CR  2:25-CR-00381-MWF

14          Plaintiff,                 PLEA AGREEMENT FOR DEFENDANT
                                       ELIAHU GALAM
15                 v.

16  ELIAHU GALAM,

17          Defendant.

18

19

20       1.   This constitutes the plea agreement between ELIAHU GALAM

21  ("defendant") and the United States Attorney's Office for the Central

22  District of California (the "USAO") in the investigation of an

23  unlicensed cash-for-cryptocurrency exchange business operated out of

24  defendant's place of business in Woodland Hills, California.  This

25  agreement is limited to the USAO and cannot bind any other federal,

26  state, local, or foreign prosecuting, enforcement, administrative, or

27  regulatory authorities.

28  //

1          <u>DEFENDANT'S OBLIGATIONS</u>

2      2.   Defendant agrees to:

3          a.   Give up the right to indictment by a grand jury and,

4  at the earliest opportunity requested by the USAO and provided by the

5  Court, appear and plead guilty to a one-count information in the form

6  attached to this agreement as Exhibit A, or a substantially similar

7  form, which charges defendant with operating an unlicensed money

8  transmitting business in violation of 18 U.S.C. §§ 1960(a),

9  (b)(1)(A), (b)(1)(B).

10          b.   Not contest facts agreed to in this agreement.

11          c.   Abide by all agreements regarding sentencing contained

12  in this agreement.

13          d.   Appear for all court appearances, surrender as ordered

14  for service of sentence, obey all conditions of any bond, and obey

15  any other ongoing court order in this matter.

16          e.   Not commit any crime; however, offenses that would be

17  excluded for sentencing purposes under United States Sentencing

18  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

19  within the scope of this agreement.

20          f.   Be truthful at all times with the United States

21  Probation and Pretrial Services Office and the Court.

22          g.   Pay the applicable special assessment at or before the

23  time of sentencing unless defendant has demonstrated a lack of

24  ability to pay such assessments.

25      3.   Defendant further agrees to the entry, as part of

26  defendant's guilty plea, of a personal money judgment of forfeiture

27  against defendant in the amount of $50,625.46, which sum defendant

28  admits was derived from proceeds traceable to, and otherwise involved

in, the violations described in the factual basis of the plea

agreement.  Defendant understands that the money judgment of

forfeiture is part of defendant's sentence, and is separate from any

fines or restitution that may be imposed by the Court.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained

in this agreement.

c.   At the time of sentencing, provided that defendant

demonstrates an acceptance of responsibility for the offense up to

and including the time of sentencing, recommend a two-level reduction

in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

additional one-level reduction if available under that section.

d.   Recommend that defendant be sentenced to a term of

imprisonment of no greater than 12 months and not seek, argue, or

suggest in any way, either orally or in writing, that the Court

impose a term of imprisonment above 12 months.

e.   Except for criminal tax violations (including

conspiracy to commit such violations chargeable under 18 U.S.C.

§ 371), not further criminally prosecute defendant for violations of

18 U.S.C. §§ 1956 and 1957 arising out of defendant's conduct

described in the agreed-to factual basis set forth in paragraph 10

below.  Defendant understands that the USAO is free to criminally

prosecute defendant for any other unlawful past conduct or any

unlawful conduct that occurs after the date of this agreement.

Defendant agrees that at the time of sentencing the Court may

3

consider the uncharged conduct in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed after
consideration of the Sentencing Guidelines and all other relevant
factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

5.    Defendant understands that for defendant to be guilty of
the crime charged in the single-count information, that is, operating
an unlicensed money transmitting business in violation of 18 U.S.C.
§§ 1960(a), (b)(1)(A), (b)(1)(B), the following must be true: (i)
defendant knowingly operated, conducted, controlled, managed,
supervised, directed, or owned a money transmitting business
affecting interstate or foreign commerce; (ii) the business either
(a) operated without a license from the State of California, or (b)
failed to register with the Department of Treasury, Financial Crimes
Enforcement Network ("FinCEN"), as required by 31 U.S.C. § 5330 or
regulations prescribed under that section; and (iii) defendant knew
that the business was not licensed or registered.

<u>PENALTIES</u>

6.    Defendant understands that the statutory maximum sentence
that the Court can impose for a violation of Title 18, United States
Code, Section 1960, is: five years imprisonment; a three-year period
of supervised release; a fine of $250,000 or twice the gross gain or
gross loss resulting from the offense, whichever is greatest; and a
mandatory special assessment of $100.

7.    Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that

if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration

consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than July 15, 2021, and continuing until at least May 3, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and intentionally operated an unlicensed money transmitting business affecting interstate and foreign commerce in violation of 18 U.S.C. § 1960(a), (b)(1)(A), (B).  Defendant provided cash-for-cryptocurrency exchange services through which defendant exchanged cryptocurrency to bulk cash, and bulk cash to cryptocurrency, in exchange for a pre-determined fee.  Defendant provided these services despite the fact that neither he nor his business, which he operated out of Woodland Hills, California, were registered as money transmitters with the State of California or FinCEN during the above-described time period. At all relevant times, defendant knew that neither he, his business, his employees, nor any entities affiliated with defendant were registered as money transmitters with the State of California or FinCEN.

Defendant's unlicensed cash-for-cryptocurrency exchange service operated as follows:  defendant would, for a fee, provide clients with bulk cash in exchange for cryptocurrency.  Upon connecting with a client, defendant would finalize the amount to be converted and an agreed-upon fee -- typically five percent -- and would then direct the client to send cryptocurrency to a cryptocurrency wallet that defendant controlled.

Upon receiving the cryptocurrency, defendant would direct his client to his place of business in Woodland Hills, California, where one of defendant's employees would, at defendant's direction, provide the client with the cash equivalent of the cryptocurrency that the client had transferred to defendant, minus the agreed-upon fee. Defendant did not request or otherwise require any form of identification, or otherwise require any identification documents, to complete cryptocurrency to cash exchanges.

Between July 15, 2021 and May 20, 2022, defendant converted approximately 24.49346693 Bitcoin, United States dollar equivalent of $1,012,509.22, to bulk cash for a single client, Brian McDonald ("McDonald").  Defendant coordinated approximately 62 transactions for McDonald, ranging in size from approximately $5,000 to $50,000, and would typically take a five percent fee.  Throughout this period of time, defendant and McDonald communicated via text messages, with defendant messaging McDonald, among other things, "[y]ou are . . . our favorite [customer]" and "[a]lways thinking about you," while also questioning "[h]ey dude how old are you LOL."  Defendant ultimately derived approximately $50,625.46 in profits from converting McDonald's cryptocurrency to cash.

7

1

## SENTENCING FACTORS

2      11.   Defendant understands that in determining defendant's

3  sentence the Court is required to calculate the applicable Sentencing

4  Guidelines range and to consider that range, possible departures

5  under the Sentencing Guidelines, and the other sentencing factors set

6  forth in 18 U.S.C. § 3553(a).   Defendant understands that the

7  Sentencing Guidelines are advisory only, that defendant cannot have

8  any expectation of receiving a sentence within the calculated

9  Sentencing Guidelines range, and that after considering the

10  Sentencing Guidelines and the other § 3553(a) factors, the Court will

11  be free to exercise its discretion to impose any sentence it finds

12  appropriate up to the maximum set by statute for the crime of

13  conviction.

14      12.   Defendant and the USAO agree to the following applicable

15  Sentencing Guidelines factors:

16   Base Offense Level:           20      U.S.S.G. §§ 2S1.3(a)(2);
17                                          2B1.1(b)(1)(H)

18  Defendant and the USAO reserve the right to argue that additional

19  specific offense characteristics, adjustments, and departures under

20  the Sentencing Guidelines are appropriate.

21      13.   Defendant understands that there is no agreement as to

22  defendant's criminal history or criminal history category.

23      14.   Defendant and the USAO reserve the right to argue for a

24  sentence outside the sentencing range established by the Sentencing

25  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

26  (a)(2), (a)(3), (a)(6), and (a)(7).

27

28

1

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

2    15.  Defendant understands that by pleading guilty, defendant

3    gives up the following rights:

4         a.   The right to persist in a plea of not guilty.

5         b.   The right to a speedy and public trial by jury.

6         c.   The right to be represented by counsel -- and if

7    necessary have the Court appoint counsel -- at trial.  Defendant

8    understands, however, that, defendant retains the right to be

9    represented by counsel -- and if necessary have the Court appoint

10   counsel -- at every other stage of the proceeding.

11        d.   The right to be presumed innocent and to have the

12   burden of proof placed on the government to prove defendant guilty

13   beyond a reasonable doubt.

14        e.   The right to confront and cross-examine witnesses

15   against defendant.

16        f.   The right to testify and to present evidence in

17   opposition to the charges, including the right to compel the

18   attendance of witnesses to testify.

19        g.   The right not to be compelled to testify, and, if

20   defendant chose not to testify or present evidence, to have that

21   choice not be used against defendant.

22        h.   Any and all rights to pursue any affirmative defenses,

23   Fourth Amendment or Fifth Amendment claims, and other pretrial

24   motions that have been filed or could be filed.

25

<u>WAIVER OF APPEAL OF CONVICTION</u>

26   16.  Defendant understands that, with the exception of an appeal

27   based on a claim that defendant's guilty plea was involuntary, by

28   pleading guilty defendant is waiving and giving up any right to

1    appeal defendant's conviction on the offense to which defendant is

2    pleading guilty.  Defendant understands that this waiver includes,

3    but is not limited to, arguments that the statute to which defendant

4    is pleading guilty is unconstitutional, and any and all claims that

5    the statement of facts provided herein is insufficient to support

6    defendant's plea of guilty.

7                    LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

8        17.  Defendant agrees that, provided the Court imposes a total

9    term of imprisonment on the count of conviction within or below the

10   range corresponding to an offense level of 17 and the criminal

11   history category calculated by the Court, defendant gives up the

12   right to appeal all of the following: (a) the procedures and

13   calculations used to determine and impose any portion of the

14   sentence; (b) the term of imprisonment imposed by the Court; (c) the

15   fine imposed by the Court, provided it is within the statutory

16   maximum; (d) to the extent permitted by law, the constitutionality or

17   legality of defendant's sentence, provided it is within the statutory

18   maximum; (e) the term of probation or supervised release imposed by

19   the Court, provided it is within the statutory maximum; and (f) any

20   of the following conditions of probation or supervised release

21   imposed by the Court: the conditions set forth in Second Amended

22   General Order 20-04 of this Court; the drug testing conditions

23   mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

24   drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25       18.  The USAO agrees that, provided (a) all portions of the

26   sentence are at or below the statutory maximum specified above and

27   (b) the Court imposes a term of imprisonment within or below the

28   range corresponding to an offense level of 17 and the criminal

history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## WAIVER OF COLLATERAL ATTACK

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such

action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

21.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

25.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 12 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional

14

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3             PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4        29.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 JOSEPH T. MCNALLY
   Acting United States Attorney

11

12

13 DECLAN T. CONROY                        3/7/2025
   DANIEL H. WEINER                        Date
14 Assistant United States Attorney

15

16                                         3-7-2025
17 ELIAHU GALAM                            Date
   Defendant

18

19                                         March 7, 2025

20 RONALD J. NESSIM                        Date
21 MICHAEL C. LANDMAN
   Attorneys for Defendant
22 ELIAHU GALAM

23 //

24 //

25 //

26

27

28

                              15

1          CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3     time to review and consider this agreement, and I have carefully and

4     thoroughly discussed every part of it with my attorney.  I understand

5     the terms of this agreement, and I voluntarily agree to those terms.

6     I have discussed the evidence with my attorney, and my attorney has

7     advised me of my rights, of possible pretrial motions that might be

8     filed, of possible defenses that might be asserted either prior to or

9     at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10    of relevant Sentencing Guidelines provisions, and of the consequences

11    of entering into this agreement.  No promises, inducements, or

12    representations of any kind have been made to me other than those

13    contained in this agreement.  No one has threatened or forced me in

14    any way to enter into this agreement.  I am satisfied with the

15    representation of my attorney in this matter, and I am pleading

16    guilty because I am guilty of the charge and wish to take advantage

17    of the promises set forth in this agreement, and not for any other

18    reason.

19    _E. Galam_____          _3-7-2025_____

20    ELIAHU GALAM                        Date
      Defendant

21

22    //

23    //

24    //

25

26

27

28

                              16

1

CERTIFICATION OF DEFENDANT'S ATTORNEY

2      I am ELIAHU GALAM's attorney.  I have carefully and thoroughly

3 discussed every part of this agreement with my client.  Further, I

4 have fully advised my client of his rights, of possible pretrial

5 motions that might be filed, of possible defenses that might be

6 asserted either prior to or at trial, of the sentencing factors set

7 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 a guilty plea pursuant to this agreement.

16 _____     March 7, 2025
                                       _____
17 RONALD J. NESSIM                    Date
   MICHAEL C. LANDMAN
18 Attorneys for Defendant
   ELIAHU GALAM

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. §§ 1960(a), (b)(1)(A),
                                        (B): Operating an Unlicensed Money
13   ELIAHU GALAM,                      Transmitting Business; 18 U.S.C.
                                        § 982: Criminal Forfeiture]
14            Defendant.

15

16        The United States Attorney charges:

17             [18 U.S.C. §§ 1960(a), (b)(1)(A), (B)]

18        Beginning on an unknown date, but no later than July 15, 2021,

19   and continuing until at least May 3, 2023, in Los Angeles County,

20   within the Central District of California, and elsewhere, defendant

21   ELIAHU GALAM knowingly conducted, controlled, managed, supervised,

22   directed, and owned an unlicensed money transmitting business

23   affecting interstate and foreign commerce that: (1) operated without

24   an appropriate money transmitting license in California where such

25   operation is punishable

26   //

27   //

28   //

1  as a felony under state law; and (2) failed to comply with the money

2  transmitting business registration requirements under Section 5330 of

3  Title 31, United States Code, and the regulations prescribed

4  thereunder.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in this Information.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

3

1  committing the offense or offenses giving rise to the forfeiture,

2  conducted three or more separate transactions involving a total of

3  $100,000.00 or more in any twelve-month period.

4                                    E. MARTIN ESTRADA
                                     United States Attorney
5

6

7                                    LINDSEY GREER DOTSON
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    J. MARK CHILDS
                                     Assistant United States Attorney
10                                   Chief, International Narcotics, Money
                                     Laundering, and Racketeering Section
11
                                     DECLAN T. CONROY
12                                   Assistant United States Attorney
                                     International Narcotics, Money
13                                   Laundering, and Racketeering Section

14                                   DANIEL H. WEINER
                                     Assistant United States Attorney
15                                   International Narcotics, Money
                                     Laundering, and Racketeering Section
16

17

18

19

20

21

22

23

24

25

26

27

28